UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

THOMAS LEMONS                                     CIVIL ACTION NO. 20-0329

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

ST. PAUL FIRE & MARINE                            MAGISTRATE JUDGE HORNSBY
INSURANCE COMPANY

MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment filed by Defendants St. Paul Fire & Marine Insurance Company ("St. Paul"). See Record Document 20. Plaintiff Thomas Lemons ("Lemons") has filed an opposition. See Record Document 22. St. Paul has replied. See Record Document 23. For the foregoing reasons, St. Paul's Motion for Partial Summary Judgment is hereby **GRANTED**.

FACTUAL BACKGROUND

This removed insurance coverage action stems from a 2018 car accident in Panola County, Texas. See Record Document 1-1 at ¶3. While serving his employer, CNC Oilfield Services ("CNC"), Lemons and a coworker were hit by an adverse driver on Highway 79. See id. at ¶¶4-5. The adverse driver was solely at fault for the accident and was underinsured by USAA. See id. at ¶¶6-7. Lemons suffered numerous severe injuries as a result of the crash and claims he is entitled to a significant award for both present and future damages. See id. at ¶¶16-18.

At the time of the collision, CNC had a policy of Uninsured/Underinsured Motorist ("UM") coverage with St. Paul. See id. at ¶5. On August 15, 2018, the St. Paul claim representative assigned to the matter received a request for a UM claim from the office

of Jack Bailey, Jr. ("Bailey") on behalf of Lemons. See Record Document 20-3. Within minutes, the representative emailed Bailey's office back requesting a letter of representation. See id. This letter of representation was not sent to St. Paul, however, until over five months later on January 21, 2019. See id. The following day, the claims representative noted that liability coverage had not yet been confirmed. See id. Phone calls were then exchanged between St. Paul and Bailey's office, in which $140,000 in to-date medical expenses were outlined to the claims representative, who in turn sought the underinsured policy and a status on negotiations with USAA. See id.

On February 4, 2019, a newly assigned St. Paul claim representative noted information was still needed on the underinsured policy with USAA. See id. After obtaining the USAA adjuster's name, where negotiations stood with USAA, and the status of Lemons' worker's compensation claim from Bailey's office, the representative phoned USAA and was verbally provided the liability limits on the adverse driver's policy on February 8. See id. Three weeks later, the representative spoke with a worker's compensation representative who informed him that USAA's policy limits were $30,000, but to her knowledge, the limit had not yet been offered. See id. On May 22, 2019, the representative logged that St. Paul had still not received medical records or a formal UM claim demand. See id.

The claims representative reviewed the claim file on June 17, July 9, July 18, August 20, September 9, October 8, November 20, and December 12, 2019, and logged no changes in documentation provided on each of these dates. See id. Emails were also sent to Bailey's office requesting documentation and status updates on the majority of these dates, but no responses were received. See id. Finally, on December 19, Bailey's

office responded that USAA had offered to tender the $50,000 policy limit and a tentative settlement agreement had been reached on the worker's compensation claim, but a child support lien was proving to be an impediment. See id. Bailey's office also inquired if it had sent Lemons' medical records to St. Paul yet, then provided a Dropbox link on a subsequent email dated December 23. See id. After reviewing these records on January 8, 2020, the claim representative sent a list of missing medical records St. Paul would need to proceed. See id. On January 23, Bailey's office requested a copy of the UM policy from St. Paul, which was provided later that day. See id.

That same day, Lemons filed the instant suit against St. Paul in the First Judicial Court, Caddo Parish. See Record Document 1. Lemons alleges that despite providing satisfactory proof of loss, St. Paul has arbitrarily and capriciously failed to adjust his claim and make reasonable payment under this policy. See id. at ¶19. He argues St. Paul's failures constitute bad faith under Louisiana law and entitle him to an award of penalties, reasonable attorney's fees, and mental anguish damages. See id. St. Paul's Motion for Partial Summary Judgment seeks dismissal of these bad faith claims, arguing it was not provided satisfactory proof of loss until after this suit had been brought. See Record Document 20.

## LAW AND ANALYSIS

### I.     Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Texas, 888 F.3d 170, 175 (5th Cir. 2018). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v, Bazanay, 507 F.3d 312, 319 (5th Cir. 2007).

**II.    Louisiana Revised Statutes 22:1892 and 22:1973**

Lemons' bad faith claims against St. Paul are rooted in La. R.S. 22:1892 and 22:1973.[1] See Record Document 1-1 at ¶19. These two provisions prohibit "virtually identical" conduct—the failure to pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. Korbel v. Lexington Ins. Co., 308 Fed. Appx. 800, 803 (5th Cir. 2009) (citing Reed v. State Farm Mut. Auto. Ins. Co., 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1020). The primary difference between the two statutes is the time period allowed for payment, with § 1892 requiring payment within thirty days after receipt of satisfactory proof of loss, and § 1973 requiring payment within sixty days. See id; La. R.S. 22:1892(A)(1); 22:1973(B)(5). Whether or not a refusal to pay is arbitrary, capricious, or without probable cause is dependent upon the facts known to the insurer at the time of its action. See Reed, 857 So.2d at 1021. Because both statutes are penal in nature, they must be strictly construed. See id. at 1020; Hart v. Allstate Ins. Co., 437 So.2d 823, 827 (La. 1983).

A satisfactory proof of loss is that which is sufficient to *fully apprise* the insurer of the insured's claim. See McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La. 1985)

---

[1] The Court notes these statutes were previously codified at 22:658 and 22:1220, respectively. Both statutes were recodified in 2009 with no substantive changes made.

(emphasis in original). To establish satisfactory proof of loss, the insured must establish the insurer received sufficient facts demonstrating (1) the owner or operator of the other vehicle was uninsured or underinsured, (2) the other driver was at fault, (3) such fault gave rise to damages, and (4) the extent of those damages. See id; Hart, 437 So.2d at 828.

"One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probably cause." Reed, 857 So.2d at 1020 (citing Hart, 437 So.2d at 828). Consequently, "a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious." Id. at 1020-21 (citing McClendon v. Economy Fire & Cas. Ins. Co., 98-1537 (La. App. 3 Cir. 4/7/99), 732 So.2d 727, 730).

### III.    Analysis

The instant dispute centers on whether Lemons provided St. Paul with satisfactory proof of loss, triggering the insurer's obligations. St. Paul argues it did not receive confirmation that the adverse driver was underinsured by USAA until June 11, 2020, when it obtained a copy of the declarations page from the driver's USAA policy and an affidavit of no other insurance through formal discovery in this matter. See Record Document 20-1 at 8. Lemons contends that he provided information to St. Paul as it became available, and nevertheless, St. Paul had sufficient information indicating exposure and was required to tender a reasonable amount to him. See Record Document 22 at 1-2.

Additionally, Lemons argues that St. Paul has continued to violate the duties of good faith set forth by these statutory provisions via its "abusively low" tender offers. Id. at 6-9.

### A. Satisfactory Proof of Loss

The evidence provided by St. Paul in support of its Motion for Partial Summary Judgment tells the tale of an insurer taking steps to investigate a claim with little assistance from the insured. See Record Document 20-1 at 5-8. St. Paul's emails and claim logs detail its attempts to obtain satisfactory proof of loss from Lemons and his counsel for more than a year. See Record Document 20-3. Lemons argues that St. Paul's own investigation into the adverse driver, particularly its phone call to the USAA claims adjuster in February 2019, constituted verbal confirmation of the policy limit at issue and served as sufficient proof of loss. See Record Document 22 at 5. This, however, ignores the clear law on this issue placing the burden on the insured party to provide necessary documentation to his insurer. See Reed, 857 So.2d at 1020.

Further, St. Paul's efforts to discover the USAA policy limit revealed conflicting information. See Record Document 20-3. Over the phone, the USAA claims adjuster stated the policy had a $50,000 limit, whereas a worker's compensation representative instructed St. Paul of a $30,000 limit, and Bailey's office later emailed that a $50,000 settlement was in the works. See id. Despite repeated outreaches to obtain proof of underinsurance from Bailey's office, this information was not supplied. Only through formal Rule 26 disclosures for this lawsuit did St. Paul obtain documentation of the adverse driver's policy with USAA and an affidavit establishing he had no other insurance. See Record Document 20-4. This was handed over to St. Paul on June 11, 2020, yet the driver's affidavit is dated December 11, 2019, over a month before suit was filed. See id.

Once again, the law clearly states that an insured party who fails to relay necessary information to his insurer cannot later claim the insurer was arbitrary and capricious in delaying payout of a claim. See McClendon, 732 So.2d at 727.

Based on the evidence produced, the Court finds St. Paul did not receive satisfactory proof of loss from Lemons until June 11, 2020. St. Paul's tender offer of an $85,000 check to Lemons dated June 12, 2020 falls well within the thirty and sixty-day deadlines contemplated by § 1892 and § 1973. See Record Document 20-6.

### B. Continuing Violation Through "Abusively Low" Tender Offers

Lemons makes the additional argument that St. Paul knew it had significant exposure under its UM policy with CNC, and once the formal requirements of satisfactory proof of loss were met, failed to provide reasonable tender offers that continue to violate § 1892 and § 1973. See Record Document 22 at 6. He cites Guillory v. Lee, a Louisiana Supreme Court opinion, for the proposition that St. Paul has engaged in "vexatious" conduct in violation of these statutes by offering only $160,000 to this point.[2] See id. at 9. St. Paul counters that this argument alleges post-litigation conduct that was not—and could not have been—alleged in Lemons' complaint, while emphasizing their Motion for Partial Summary Judgment pertains only to the allegations of pre-lawsuit bad faith set forth in the initial pleading. See Record Document 23 at 2.

The Court agrees with St. Paul. The alleged violations of § 1892 and § 1973 in Lemons' complaint could only have been in reference to the lack of payouts sent at the time of filing in January 2020. As outlined above, the Court has found St. Paul was not provided satisfactory proof of loss until its receipt of formal discovery in June 2020, and

---

[2] In addition to the $85,000 check sent to Lemons on June 12, 2020, St. Paul also sent $75,000 in December 2020. See Record Document 20-6.

therefore could not have violated these provisions through unreasonable tender offers at the onset of litigation.

The Court recognizes that as a result of its findings, Lemons is likely to seek amendment of his complaint to allege St. Paul has presented unreasonably low tender offers in violation of these statutes. See Record Document 22 at 7. If such a motion is made, Lemons is reminded the deadline for such amendments has long passed. See Record Document 15. Pursuant to Federal Rule of Civil Procedure 16(b)(4), he will be required to show good cause to modify the Court's scheduling order which has been in place since July 2020. See id.

## CONCLUSION

St. Paul did not receive satisfactory proof of loss from Lemons until June 11, 2020 and sent payment immediately after obtaining this information. Therefore, no violation of La. R.S. 22:1892 or 22:1973 was present at the time this case was filed in January 2020. Accordingly, St. Paul's Motion for Partial Summary Judgment (Record Document 20) is hereby **GRANTED**. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 21st day of April, 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT